# EXHIBIT A

**AI DIGITAL**

09/013/2022

Kyle Kuchera

███████████████

Philadelphia, PA 19103

Dear Kyle,

On behalf of Stephen J Corp. d/b/a AiDigital ("AiDigital" or the "Company"), I am pleased to offer you (the "Employee," "you," or "y our") a position of Senior Sales Director beginning October TBD (the "Start Date"). The initial terms of your position with the Company are set forth below.

1. <u>Position.</u>

On your Start Date, you will begin working for the Company as a Senior Sales Director at the Company's New York office. You will report to Avi Jamal During your employment, you further agree that you will devote all of your business time and attention to the business of the Company and that you will not, directly or indirectly, engage or participate in any personal, business, charitable or other enterprise that is competitive in any manner with the business of the Company, whether or not such activity is for compensation.

2. <u>Compensation.</u>

Your annual base salary will be $180,000 if annualized, subject to periodic review and adjustment by the Company in its discretion. You will be paid semi-monthly on the Company's regularly scheduled pay dates. All payments of wages shall be made in accordance with the Company's standard payroll policies and practices and shall be subject to all applicable withholding required by law. Your position is classified as exempt in accordance with federal and applicable state wage and hour laws. Therefore, you will not be eligible for overtime regardless of the number of hours you work in any week.

During your employment with the Company you will be entitled to participate in all of its then-current customary employee benefit plans and programs, and in all events subject to eligibility requirements, enrollment criteria, and the other terms and conditions of such plans and programs. The Company reserves the right to change or rescind its benefit plans and programs and alter employee contribution levels in its discretion.

Additionally, you will be eligible to receive variable compensation; details are attached as Addendum A.



3. Intellectual Property.

The right to Intellectual Property created by you in the course of performing services for the Company belongs to the Company and any and all work performed by you during the course of your employment with the Company will be deemed "work for hire."

4. Term.

Your initial employment with the Company will be for 30 days beginning on the Start Date (the "Initial Term"). Within thirty (30) days prior to the expiration of the Initial Term, you and the Company agree to revisit this Section 5 for the purposes of extending your employment with the Company for an additional term to be mutually agreed upon in writing. For the avoidance of doubt, you may only be terminated by the Company during the Initial Term for cause, which shall include negligence, reckless, willful or intentional misconduct, fraud, theft, embezzlement, or a continued display of a failure or inability to perform duties owed to the Company.

5. Additional Information.

During your employment, you shall devote your entire working time for or at the direction of the Company and/or its affiliates, use your best efforts to complete all assignments, and adhere to the Company's procedures and policies in place from time to time.  You will perform the customary duties and responsibilities commensurate with your title.  You will be permitted to work remotely from your home residence in New York, subject to being available to be present in the Company's office as requested.  You may also be required to travel on business from time to time as well.  During your employment with the Company and its affiliates, you may not engage in any other paid activities without the prior written consent of an authorized officer of the Company or any other unpaid activities that inhibit or prohibit the performance of your duties to the Company and its affiliates or inhibit or conflict in any way with the business of the Company.

By signing this letter below, you agree that during your employment and thereafter that you shall not use or disclose, in whole or in part, the Company's or its clients' trade secrets, confidential and proprietary information, including client lists and information, to any person, firm, corporation, or other entity for any reason or purpose whatsoever other than in the course of your employment with the Company or with the prior written permission of the Company's CEO.

You also will be required to sign the enclosed Restrictive Covenants Agreement (the "Covenants Agreement") annexed to this letter as Exhibit A, the terms of which are in addition to the terms of this offer letter.  By executing this letter below, you represent and warrant to the Company that you have no agreement with, or duty to, any previous employer or other person or entity that would prohibit, prevent, inhibit, limit, or conflict with the performance of your duties to the Company and that you have provided the Company with copies of all confidentiality, non-solicitation, non-competition and similar agreements to which you are a party or are otherwise bound.



This offer of employment with the Company is contingent upon our satisfactory completion of a criminal background check, proof of your authorization to work in the United States, and a satisfactory review of all confidentiality, non-solicitation, non-competition or similar agreements to which you are a party or are otherwise bound.  If, based upon a unique circumstance, you commence work before the Company has completed its inquiry, you will be deemed to be a conditional employee.

Although we hope that your employment with us is mutually satisfactory, employment at the Company is "at will."  This means that, just as you may resign from the Company at any time with or without cause, the Company has the right to change the terms and conditions of your employment or terminate this employment relationship at any time with or without cause or notice.  Neither this letter nor any other communication, either written or oral, should be construed as a contract of employment, unless it is signed by both you and the Company's CEO and such agreement is expressly acknowledged as an employment contract.

The payments and benefits under this Agreement are intended to be exempt from Section 409A of the Internal Revenue Code of 1986, as amended, ("Section 409A" ) or, if not exempt, in compliance therewith, and, accordingly, to the maximum extent permitted, this letter shall be interpreted to be exempt from Section 409A or in compliance therewith.

We hope that you elect to accept this offer of employment.  Kindly sign your name at the end of this letter to signify your understanding and acceptance of these terms and that no one at the Company has made any other representation or warranty to you.  The Company welcomes you as an employee and looks forward to a successful relationship in which you will find your work both challenging and rewarding.

Please don't hesitate to let me know if I can answer any questions about this offer or about the Company.  We are thrilled to make this offer for you to join our team.  This offer must be accepted within two business days and will be deemed to have been withdrawn if your signed acceptance of this offer, together with the signed Covenants Agreement, is not received by the undersigned on or before the above referenced date.

This offer expires September 13, 2022 and your continued employment is contingent upon your references providing acceptable feedback, proper proof of work authorization and an appropriate background check.

Upon acceptance of this letter, please sign and return to Stephen Magli via email.  Stephen@Aidigital.io

Sincerely,

Stephen Magli

Founder and Chief Executive Officer

AiDigital

[Signature Page Follows]



Agreed and accepted as of:

_____     _____

Stephen Magli                                                                                                  Date

Please complete the following:

Legal Name (please print): Kyle Kuchera

Social Security Number: ▮▮▮-7130

Birth Date: ▮▮/1979

*[signature: Kyle M Kuchera]*         Date: 9/13/2022

-4-



## Addendum A

Senior Director of Sales                                   **Annual Salary OTE**

Kyle Kuchera                              $180,000

| **Base Salary** | 0-$500,000 | $500,000 - $1,000,000 | $1,000,000-$1,500,000 | $1,500,000-$2,000,000 | $2,000,000-$2,500,000 | $2,500,000-$3,000,000 | $3,000,000+ |
|---|---|---|---|---|---|---|---|
| $180,000 | | | | | | | |
| | 4.5% | 5.5% | 6.5% | 8.5% | 9% | 10% | 11% |

Commissions will be based on gross sales under the assumption we make at least 35% margin.
Commissions are paid on paid invoice.

**RESTRICTIVE COVENANTS AGREEMENT**

**THIS RESTRICTIVE COVENANTS AGREEMENT** (the "Agreement") is made as of August 29, 2002__ (the "Effective Date") between **Stephen J. Corp. d/b/a AiDigital**, a New York corporation ("AiDigital" or the "Company") and Kyle Kuchera an employee of AiDigital (the "Employee").

In consideration of AiDigital's continued employment of Employee on an at-will basis, the compensation provided to Employee, access to Confidential Information, client relationships, Company goodwill, and the mutual promises and covenants herein contained, and intending to be legally bound, the parties agree as follows:

**1. Covenant Against Competition.**  To protect the Company's legitimate protectable interests in, among other things, the Company's Confidential Information, customer relationships and goodwill, Employee agrees that during the term of employment and for one year thereafter, throughout the United States or in any state in which Employee provided services to a Client of the Company or in which Employee's access to Confidential Information could cause the Company harm, Employee shall not, directly or indirectly, become employed by, engage, invest or participate in a Competitive Business, provided, however, that Employee may own, as a passive investor, publicly-traded securities of any corporation that competes with the business of the Company so long as such securities do not, in the aggregate, constitute more than three percent 3%) of any class of outstanding securities of such corporations. For purposes of this section, a "Competing Business" means a person or entity that performs services that are the same or substantially similar to the business of the Company.

**2. Covenant Against Solicitation of Clients**.  Employee understands and agrees that during the period of Employee's employment with AiDigital, and for one (1) year following the separation of Employee's employment for any reason, including, without limitation, termination by AiDigital for cause or without cause, Employee shall not directly or indirectly solicit business from, or provide or attempt to provide services to, any Client to which Employee has been introduced or about which Employee has received information through AiDigital, or any Client for which Employee has performed services while employed by AiDigital.  "Client" in this section includes all U.S. offices of such client.

**3. Covenant Against Solicitation of Employees**.  Employee understands and agrees that during the period of Employee's employment with AiDigital, and for one (1) year following the separation of Employee's employment for any reason, including, without limitation, termination by AiDigital for cause or without cause, Employee shall not directly or indirectly approach, solicit, raid, entice, or induce any employee of AiDigital, to end their employment with AiDigital (or any of its subsidiaries, parent entities, or affiliates) or to become employed by any Client to which Employee has been introduced or about which Employee has received information through AiDigital, or any Client for which Employee has performed services while employed by AiDigital.  "Client" in this section includes all U.S. and global offices of such client.

**4. Non-disclosure of Confidential Information**.

a. **Preservation of Confidentiality**. Employee has not and will not, either during or at any time after his/her employment with AiDigital, without the prior written consent of AiDigital, communicate or



disclose to, or use for the benefit of Employee or any other person or entity, any proprietary or confidential information, trade secret or know-how belonging to AiDigital (collectively, the "Confidential Information"), whether or not such Confidential Information is tangible or intangible, and in whatever form or medium provided, as well as all information that contains, reflects, or is derived from said Confidential Information, except to the extent required to perform the duties of his/her employment, as described in this Agreement.

Confidential Information includes, but is not limited to, all business information, technological information, intellectual property, confidential records, pricing information, marketing information, sales techniques, customer lists, information about customer requirements, terms of contracts with suppliers, subcontractors, and customers, planning and financial information, marketing plans and future business plans.

The term "Confidential Information" does not include any information that is in or comes into the public domain, including information that is publicly known or generally utilized by others engaged in the same business as AiDigital, other than as a result of a disclosure in violation of this Agreement.

The obligation not to disclose Confidential Information is perpetual and extends to information of AiDigital's customers, subcontractors, and suppliers who may have disclosed Confidential Information to AiDigital or the Employee as a result of Employee's status as an employee of AiDigital.  Also, Employee will not, without AiDigital's permission: (i) remove any Confidential Information from AiDigital's or customer's premises; (ii) copy or reverse engineer any Confidential Information; or (iii) keep any Confidential Information relating to a customer.

Nothing in this Agreement shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order.  Employee shall promptly provide written notice of any such order to an authorized officer of AiDigital.  Employee acknowledges that nothing in this Agreement prohibits or restricts Employee from initiating communications directly with, responding to an inquiry from, or providing testimony before the Securities and Exchange Commission (SEC), the Financial Industry Regulatory Authority (FINRA), or any other self-regulatory organization, or any other federal or state regulatory authority regarding this Agreement or its underlying facts or circumstances.  Employee further acknowledges that pursuant to the Defend Trade Secrets Act, 18 USC Sections 1833(b)(1) or (2): (a)  Employee will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret if (i) Employee makes such disclosure in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney and such disclosure is made solely for the purpose of reporting or investigating a suspected violation of law; or (ii) Employee makes such disclosure in a complaint or other document filed in a lawsuit or other proceeding if such filing is made under seal; and (b) if an individual files a lawsuit for retaliation by an employer for reporting suspected violation of law, the individual may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (i)  files any document containing the trade secret under seal; and (ii) does not disclose the trade secret, except pursuant to court order.



b. **Return of Property**.  Upon request by AiDigital at any time or immediately upon the termination of Employee's employment, Employee will promptly return all AiDigital and client documents and any other property in Employee's possession, custody, or control belonging to AiDigital or its clients, and any other materials containing Confidential Information, including all copies of same, and records, notes, compilations or other matter relating thereto. Employee also agrees that that any social media or other electronic accounts that Employee opens, handles or becomes involved with on the Company's behalf constitutes Company property and Employee agrees that he/she will provide all access codes, passcodes, and administrator rights to the Company at any time during or after his/her employment on demand.

**5. Survival of Provisions**.  The provisions of Sections 1, 2, 3, and 4 of this Agreement will survive the termination or expiration of this Agreement.

**6. Severability**.  The parties intend that the provisions of this Agreement will be enforced to the fullest extent permitted under the laws and public policies of New York, but that the unenforceability (or the modification to conform with such laws or public policies), invalidity, or illegality in any respect of any provision hereof will not render unenforceable or impair the remainder of this Agreement.  Accordingly, if any Court rules that any provision of Section 1, 2,  3 or 4 is unenforceable because of the scope, duration, or area of its applicability, the Court making such determination shall modify such scope, duration, or area, or all of them, and the provision(s) will be applied as modified.  The illegality, invalidity, or unenforceability of any provision of this Agreement will not affect or impair the enforceability of any other provision of this Agreement.

**7. At-Will Employment Status**.  The Employee acknowledges that this Agreement is not a promise by AiDigital to continue to employ Employee.  Employee further acknowledges that he/she is an at-will employee of AiDigital and that AiDigital may terminate Employee, at any time, with or without cause.

**8. Entire Agreement**.  This Agreement contains the entire understanding of the parties with respect to the subject matter hereof, and no statement, representation, warranty, or covenant with respect thereto has been made by either party except as expressly set forth herein.  The parties may not orally change or terminate this Agreement.  This Agreement supersedes and cancels all prior Agreements between the parties, whether written or oral relating to the employment of Employee.

**9. Amendment**.  No amendment, modification of supplement of any provision of this Agreement will be effective unless in writing signed by a duly authorized representative of each of the parties to it and then only in the specific instance and for the specific purpose given.

**10. Waiver**.  No provision of this Agreement shall be deemed to have been waived by AiDigital unless a written waiver from AiDigital has been obtained and without limiting the generality of the foregoing, no failure or delay by AiDigital in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, or privilege preclude any other or further exercise thereof.

**11. Notices**.  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been given if personally delivered or mailed, first class, postage pre-paid, certified mail, return receipt requested, to each of the parties and its or his/her address above written, or at such other address as either of the parties may designate in conformity with the foregoing.



**12. Section Headings**. The headings contained in this Agreement are for convenience only and do not form a part of this Agreement and are not intended to interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

**13. Successors and Assigns**. All the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective heirs and personal representatives of the Employee and the successors and assigns of AiDigital.

**14. Injunctive Relief**.  Employee hereby acknowledges and agrees that any breach of this Agreement herein and/or disclosure or misuse of Confidential Information in violation or breach of this Agreement, may result in irreparable harm to AiDigital and its client base and/or its customers and/or other third parties, the amount of which may be difficult to ascertain and which could not be adequately compensated in monetary damages, and that therefore, in addition to all other remedies, AiDigital shall be entitled to specific performance and/or equitable relief, including without limitation, injunctive relief, to enforce compliance.  Employee agrees that such right shall be in addition to the remedies otherwise available at law and in equity, including monetary damages.  Employee agrees to waive (and to cause his/her agents, and professional advisors to waive) any requirement that AiDigital furnish any bond or other security in connection with any application for, and obtaining of, any such injunctive or other equitable relief, and any requirement of proof of actual damages.

**15. Governing Law**.  This Agreement shall be governed and construed by the laws of the State of New York, without regard to conflict of laws principles.  The parties agree that any action or proceeding arising out of or related in any way to this Agreement shall be brought solely in a court of competent jurisdiction sitting in the County of New York, in the State of New York.  The parties hereby irrevocably and unconditionally consent to the jurisdiction of any such court and hereby irrevocably and unconditionally waive any defense of an inconvenient forum to the maintenance of any action or proceeding in any such court, any objection to venue with respect to any such action or proceeding and any right of jurisdiction on account of the place of residence or domicile of any party thereto.  The parties hereby irrevocably and unconditionally waive the right to a jury trial in connection with any claim arising out of or related to this Agreement.

**16.     Indemnity.**  Without prejudice to any other provisions of this Agreement, the Employee agrees to indemnify and hold harmless AiDigital in full for and against all costs, claims, demands, expenses or liabilities whatsoever and howsoever arising, including, without limitation, all legal expenses and other professional fees, which AiDigital may suffer or incur, including, but not limited to, any failure of the Employee to perform its obligations under this Agreement.



**IN WITNESS WHEREOF,** the parties hereto have duly executed this **RESTRICTIVE COVENANTS AGREEMENT** as of the date written above.

**STEPHEN J. CORP. d/b/a AIDIGITAL**

_____

Name: Stephen J. Magli

Title: Founder and Chief Executive Officer

**Employee**

_____

Print Name: Kyle Kuchera

Address: ████████████████████████ Philadelphia, PA 19103

-10-