**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

AIDIGITAL OPERATING LLC

                Plaintiff.

       v.

KYLE KUCHERA, NOAH HELD,
MICHAEL BURNS, MAVERN
MARKETING LLC, AND
KUCHERA/HELD LLC

            Defendants.

Civil Action No. 23-cv-11076 (AS)

<u>**SECOND AMENDED COMPLAINT**</u>

Plaintiff AiDigital Operating LLC ("<u>AiDigital</u>", "<u>Plaintiff</u>", or the "<u>Company</u>"), through its undersigned attorneys, by way of this Complaint against Defendants Kyle Kuchera ("<u>Kuchera</u>"), Noah Held ("<u>Held</u>"), Michael Burns ("<u>Burns</u>"), Mavern Marketing LLC d/b/a Mavern Media ("<u>Mavern</u>"), and Kuchera/Held LLC ("<u>Kuchera/Held</u>" and together, "<u>Defendants</u>"), allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.      AiDigital is a programmatic digital advertising company that helps agencies and advertisers navigate the digital ecosystem by delivering access, communication planning, strategy, and data to maximize their advertising. AiDigital has built relationships with clients over the past five years and understands their advertising needs.

2.      Starting in 2022, AiDigital began offering programmatic curation services, through which it uses data packages to find and share high-quality, relevant content to an advertiser's desired online audience. AiDigital primarily uses three curation platforms, which are not available to the public, and uses the data sets from these platforms to connect its clients with suppliers of ad

space for the right advertising campaigns using the right audience data. AiDigital charges a fee for these services, and its pricing information is not available to the public.

3.      Defendants Kuchera and Held, former employees of AiDigital, along with Defendant Burns, founded a competing programmatic digital advertising company, Mavern. Defendants misappropriated AiDigital's trade secrets and are using them for Mavern's benefit—those trade secrets being (i) AiDigital's client pitches and branding materials, including the LucidX curation sales pitch and overview decks, (ii) AiDigital's ad campaign process, (iii) access to PubMatic, Xandr, OpenX, and other platforms through AiDigital, (iv) the process to use PubMatic, Xandr, OpenX, and other data sets for programmatic curation, (v) the data sets for programmatic curation, (vi) the tools and features used to create data sets for programmatic curation, (vii) AiDigital customers for which the data sets are used, and (viii) the pricing between AiDigital, PubMatic, and the customers (together, the "Trade Secrets"). AiDigital protects the confidentiality of the Trade Secrets.

4.      Defendants have solicited AiDigital's clients through Mavern. At least one AiDigital client informed AiDigital that she had been contacted by Burns, who sent her a message asking about her programmatic advertising needs. Because Kuchera and Held were entrusted with access to AiDigital's client lists *and* pricing information, they can use that insight to undercut AiDigital and offer more competitive pricing to the same customers through Mavern.

5.      Defendants Kuchera and Held also formed a Florida limited liability company, Kuchera/Held, and intended to use it to divert business opportunities from AiDigital to benefit themselves. While the full extent of Kuchera/Held's activities remains to be determined through discovery, Defendant Kuchera and Held agreed to keep this entity a secret and to use it to make themselves significant money.

6.     Defendants' actions have undermined and will continue to undermine AiDigital if not enjoined.  If Defendants do not cease their activities immediately, the damage to AiDigital's goodwill and business will be certain and incalculable.

7.     AiDigital seeks injunctive and monetary relief against Defendants for misappropriating trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* (the "DTSA"), and New York common law, as well as for breaches of contract, breach of the duty of loyalty, tortious interference with contracts and existing contractual relations, and civil conspiracy.

## THE PARTIES

8.     Plaintiff AiDigital is a New York limited liability company with its principal place of business in Glen Head, New York.

9.     Defendant Kuchera is a resident of the State of Pennsylvania.

10.     Defendant Held is a resident of the State of Pennsylvania.

11.     Defendant Burns is a resident of the State of Pennsylvania.

12.     Defendant Mavern is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

13.     Defendant Kuchera/Held is a Florida limited liability company.

14.     Upon information and behalf, Kuchera and Held are the two members of Kuchera/Held.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Complaint includes claims arising under the laws of the United States, specifically the DTSA, 18 U.S.C. § 1836, *et seq.*

16.     This Court has supplemental jurisdiction under 28 U.S.C. § 1361 for AiDigital's claims for misappropriation of trade secrets, breaches of contract, breach of the duty of loyalty, tortious interference with contracts and existing contractual relations, and civil conspiracy.

17.     Venue is proper under 28 U.S.C. § 1391 pursuant to a forum selection clause in Kuchera's and Held's Restrictive Covenant Agreements (Kuchera's Employment Agreement and Restrictive Covenants Agreement are collectively referred to as the "Kuchera Agreement"; Held's Employment Agreement and Restrictive Covenants Agreement are collectively referred to as the "Held Agreement"; the Kuchera Agreement and Held Agreement are collectively the "Agreements"), which provides in pertinent part: "The parties agree that any action or proceeding arising out of or related in any way to this Agreement shall be brought solely in a court of competent jurisdiction sitting in the County of New York, in the State of New York." Ex. A at 9; Ex. B at 9.

18.     Defendants Burns and Mavern have consented to jurisdiction and venue in the United States District Court for the Southern District of New York.

## FACTUAL BACKGROUND

**A.    Origins and AiDigital's Work.**

19.     AiDigital, formerly Stephen J. Corp., was founded by its current Chief Executive Officer, Stephen J. Magli ("Magli"), in 2018.

20.     AiDigital is a programmatic digital advertising company that helps agencies and advertisers navigate the digital ecosystem by delivering access, communication planning, strategy, and data to maximize their advertising.

21.     One service that AiDigital provides is that it charges a fee to advertising clients to run their ad campaigns, which includes the planning, launch, and optimization of an advertising campaign across social media, streaming devices, TV, websites, and other media platforms.

22.    Second, AiDigital provides demand-side platform ("DSP") services; in other words, it leverages third-party platforms to automate the process of buying and selling digital ad space in real time.

23.    The intricate process involves real-time auctions where advertisers (businesses or brands) bid for ad space on websites, mobile apps, and other digital platforms (known as suppliers).

24.    For example, when a user loads a webpage that has advertising space, the website (the supplier) sends a request to a supply-side platform ("SSP") to get the best price on an ad.

25.    The SSP creates an ad request with information such as device type, URL, IP address, category, and cookies.

26.    The ad request is then sent to a DSP (a media platform used by advertisers and agencies to set up their digital campaigns).

27.    The DSP has the criteria that various advertisers set for their ad placement, targeting criteria, and bidding price.

28.    If there is a match, the DSP submits the bids to the ad exchange.

29.    The exchange validates all the bids and chooses the winning bid, which is then loaded on the webpage along with the website's content.

30.    This entire process occurs in milliseconds while the webpage is loading.

31.    AiDigital provides advertisers with real-time metrics on how well a single ad or an ad campaign is doing, which can be measured by clicks, downloads, installs, or time spent viewing an ad.

32.    These metrics are known as key performance indicators ("KPI").

**B.    AiDigital's Duties Concerning, and Protection of, its Trade Secrets and Confidential Information.**

33.    In 2022, AiDigital started offering a third type of service called programmatic curation.

34.    AiDigital's programmatic curation offering is called LucidX.

35.    AiDigital works with customers on programmatic curation across the United States and globally.

36.    Curation enables third party organizations to insert themselves into the above ecosystem and allows them to provide a targeted fit for an advertiser for ad space from a supplier (website, streaming service, etc.) based on the audience the advertiser is trying to reach, to help the advertiser maximize the impact of the money it spends on ads.

37.    While programmatic advertising has traditionally used "cookies" (that is, data that is collected and saved by a web browser about a user's browsing activity) to target ads to particular users, programmatic curation instead uses data packages to find and share high-quality, relevant content to an advertiser's desired online audience.

38.    Curators bring value to advertisers by creating packages that combine their unique offering—such as better inventory selection, proprietary data or identity segments, or preferential publisher access or rates—with hand-picked supply from across the open internet.

39.    This results in a tailored inventory that is aimed at better hitting the advertisers' KPI.

40.    Programmatic curation employs tools and features, such as contextual tools, intelligent targeting, smart curation, dynamic deal optimization, and keywords, to create the targeted packages.

41.    AiDigital primarily uses three vendors, PubMatic, Xandr, and OpenX, which provide it with curation platforms that AiDigital uses to develop its data sets to help advertisers hit their KPI on ad campaigns.

42.    While these vendors do not exclusively provide services to AiDigital, there is no open sign-up for these platforms.

43.    In other words, it is not possible to simply go on the websites and make an account.

44.    PubMatic, Xandr, and OpenX contract only with known entities in the advertising industry.

45.    It is necessary to have the goodwill as a trusted company in the space in order to develop a relationship with these platforms and obtain accounts with them.

46.    AiDigital then takes the data sets from these platforms and uses them to connect advertisers with suppliers for the right advertising campaigns using the right audience data.

47.    The specialized manner of navigating and leveraging the PubMatic, Xandr, and OpenX platforms for the specific purpose of programmatic curation is a guarded expertise exclusive to AiDigital.

48.    AiDigital independently developed this operational methodology through years of experience and continuous improvement.

49.    The unique approach of executing programmatic curation ad campaigns by working across platforms provides a competitive edge, enabling AiDigital to identify tailored opportunities for its clients' specific needs, a capability not commonly replicated in the industry with the same efficiency or effectiveness.

50.    AiDigital is able to identify which advertisers are on the advertising platforms and what their advertising needs are in terms of KPI.

51. AiDigital also understands the algorithms of the platforms, so it can couple that with the needs of advertisers; for example, an advertisers might send bids for ads at different prices, or mainly buy display advertising on websites as opposed to ads on TV streamlining services.

52. This knowledge allows AiDigital to identify the opportunity and then to pitch a prospective client on the value that it could generate for them.

53. AiDigital obtains data sets from the platforms through password-protected accounts and stores them on the Company's computer systems, which can only be accessed through an employee's password-protected company computer.

54. AiDigital does not share its methodology for using PubMatic, Xandr, OpenX, or other data sets for programmatic curation with anyone outside of AiDigital.

55. Only those employees who directly work in programmatic curation are entrusted with the details of the curation process.

56. The identities of AiDigital's clients are not readily available to the public or its competitors.

57. AiDigital has spent significant time and resources over the past five years to develop this client list.

58. AiDigital stores client information on its computer system, which can only be accessed through an employee's password-protected company computer and does not otherwise share its client lists with anyone outside of AiDigital.

59. Similarly, the pricing AiDigital offers to its customers is not readily available to the public or its competitors.

60. AiDigital does not publicize the pricing information on its website or otherwise and does not disclose the pricing information to anyone outside of its customers.

61.     If a competitor has access to AiDigital's pricing information, then he or she can understand the profit margins on client deals and use that insight to undercut AiDigital and offer more competitive pricing to its own customers.

62.     AiDigital charges a fee for its services based on an advertiser's media spend over a given period (this can be monthly or quarterly).

63.     AiDigital also charges additional fees based on how successful the campaign is (the number of times that a user in the target audience sees an advertisement).

64.     All of this information is AiDigital's Trade Secrets.

65.     AiDigital has taken reasonable measures to keep this information secret.

**C.    Kuchera & Held.**

66.     Upon information and belief, Defendants Kuchera and Held are cousins.

67.     AiDigital hired Kuchera as Senior Sales Director and Held as Curation Associate in 2022 to help AiDigital build out programmatic curation.

68.     Defendants Kuchera and Held signed the Agreements on September 13, 2022 and December 20, 2022, respectively, to confirm their employment with AiDigital. *See* Exs. A–B.

69.     In the Employment Agreements, Defendants Kuchera and Held expressly agreed that, during their employment, they would not engage in competitive enterprises with AiDigital.

70.     In Paragraph 1 of their Employment Agreements, Defendants Kuchera and Held agreed:

> [Y]ou will devote all of your business time and attention to the business of the Company and that you will not, directly or indirectly, engage or participate in any personal, business, charitable or other enterprise that is competitive in any manner with the business of the Company, whether or not such activity is for compensation.

Ex. A at 1; Ex. B at 1.

71.     Second, Defendants Kuchera and Held agreed in their Employment Agreements that AiDigital retained ownership rights in all intellectual property that Defendants Kuchera and Held created during the course of their employment.

72.     In Paragraph 3 of their Employment Agreements, Defendants Kuchera and Held agreed: "The right to Intellectual Property created by you in the course of performing services for the Company belongs to the Company and any and all work performed by you during the course of your employment with the Company will be deemed 'work for hire.'"  Ex. A at 2; Ex. B at 2.

73.     Defendants Kuchera and Held also expressly agreed they would not use or disclose AiDigital's trade secrets and confidential information.

74.     In Paragraph 5 of their Employment Agreements, Defendants Kuchera and Held agreed:

> By signing this letter below, you agree that during your employment and thereafter that you shall not use or disclose, in whole or in part, the Company's or its clients' trade secrets, confidential and proprietary information, including client lists and information, to any person, firm, corporation, or other entity for any reason or purpose whatsoever other than in the course of your employment with the Company or with the prior written permission of the Company's CEO.

Ex. A at 2; Ex. B at 2.

75.     To protect the legitimate business interests of AiDigital and in consideration of the Company's willingness to provide Defendants Kuchera and Held with access to its confidential information, customer relationships, and goodwill, Defendants Kuchera and Held agreed to a covenant against competition.

76.     In Paragraph 1 of the Restrictive Covenants Agreement, Defendants Kuchera and Held agreed not to "directly or indirectly, become employed by, engage, invest or participate in a

Competitive Business" during the term of their employment with AiDigital and for one year thereafter.  Ex. A at 6; Ex. B at 6.

77.    To protect the legitimate business interests of AiDigital and in consideration of the Company's willingness to provide Defendants Kuchera and Held with access to its confidential information, customer relationships, and goodwill, Defendants Kuchera and Held also agreed to a covenant against solicitation of clients.

78.    In Paragraph 2 of the Restrictive Covenants Agreements, Defendants Kuchera and Held agreed in pertinent part:

> Employee understands and agrees that during the period of Employee's employment with AiDigital . . . Employee shall not directly or indirectly solicit business from, or provide or attempt to provide services to, any Client to which Employee has been introduced or about which Employee has received information through AiDigital, or any Client for which Employee has performed services while employed by AiDigital.

Ex. A at 6; Ex. B at 6.

79.    To protect the legitimate business interests of AiDigital and in consideration of the Company's willingness to provide Defendants Kuchera and Held with access to its confidential information, customer relationships, and goodwill, Defendants Kuchera and Held also agreed not to use or disclose the Company's confidential information.

80.    In Paragraph 4(a) of the Restrictive Covenants Agreement, Defendants Kuchera and Held agreed in pertinent part:

> **Preservation of Confidentiality.** Employee has not and will not, either during or at any time after his/her employment with AiDigital, without the prior written consent of AiDigital, communicate or disclose to, or use for the benefit of Employee or any other person or entity, any proprietary or confidential information, trade secret or know-how belonging to AiDigital . . . whether or not such Confidential Information is tangible or intangible, and in whatever form

> or medium provided, as well as all information that contains, reflects, or is derived from said Confidential Information . . . .
>
> Confidential Information includes, but is not limited to, all business information, technological information, intellectual property, confidential records, pricing information, marketing information, sales techniques, customer lists, information about customer requirements, terms of contracts with suppliers, subcontractors, and customers, planning and financial information, marketing plans and future business plans.
>
> The obligation not to disclose Confidential Information is perpetual . . . . Also, Employee will not, without AiDigital's permission: (i) remove any Confidential Information from AiDigital's or customer's premises; (ii) copy or reverse engineer any Confidential Information; or (iii) keep any Confidential Information relating to a customer.

Ex. A at 6–7; Ex. B at 6–7.

81.    Defendant Kuchera had the important role at AiDigital of Senior Director of Growth at AiDigital and was highly compensated for this significant position.

82.    In this role, Defendant Kuchera managed the curation division of AiDigital, which had nine or ten people including him.

83.    Defendant Held had the important role at AiDigital of Curation Associate and was highly compensated for this significant position.

84.    AiDigital terminated Defendants Kuchera and Held on December 22, 2023.

85.    While they were employed at AiDigital, AiDigital assumed the cost associated with renting office space for Defendants Kuchera and Held to work out of a coworking space in the Fitler Club located at 2400 Market Street, Philadelphia, Pennsylvania.

86.    Prior to working at AiDigital, Defendants Kuchera and Held had no experience working with the PubMatic, Xandr, OpenX, or other curation platforms.

87.     Defendants Kuchera and Held were both introduced to the platforms through AiDigital and have benefited from the goodwill associated with AiDigital's relationship and introduction.

88.     AiDigital normally does not provide its team members with access to the platforms.

89.     However, Defendants Kuchera and Held, as leaders of the curation business unit, specifically asked for access to the platforms, and in reliance on Defendant Kuchera's and Held's contractual representations to conduct themselves in accordance with the terms of the Agreements, AiDigital entrusted them with access.

90.     AiDigital team members taught Defendants Kuchera and Held how to use the platforms between December 2022 and January 2023.

**D.     Defendants' Misappropriation of the Trade Secrets and Solicitation of Clients.**

91.     Defendants have misappropriated AiDigital's Trade Secrets through their work with their covert side business, Mavern.

92.     Upon information and belief, Defendants Kuchera and Held abused the goodwill associated with AiDigital's relationship with PubMatic to create their own account with PubMatic to use for Defendant Mavern.

93.     Defendants would not have been able to obtain this account if Kuchera and Held had not been introduced to PubMatic through AiDigital, as PubMatic only contracts with known companies and individuals in advertising.

94.     Upon information and belief, Defendants are exploiting the programmatic curation methodology Kuchera and Held learned while at AiDigital to use data sets from PubMatic for particular advertisers on behalf of Defendant Mavern.

95.     Defendants also solicited AiDigital's clients in violation of Kuchera's and Held's legal obligations to AiDigital.

96.    On or about November 21, 2023, a client of AiDigital informed Magli that Defendant Burns sent her a message on LinkedIn.

97.    In the LinkedIn message, Defendant Burns said, "Just wanted to reach out and connect around your programmatic buys. Are you interested in testing any premium supply via Private Marketplace (PMP) deals right now?"

98.    Defendants Kuchera and Held also exploited AiDigital funds to take AiDigital curation clients to sporting events and PubMatic and OpenX personnel to expensive dinners and charged these events to the AiDigital expense account.

99.    Upon information and belief, Defendants Kuchera, Held, and Burns are soliciting these customers on behalf of Defendant Mavern.

100.    Upon information and belief, Defendants are plotting to take other customers and corporate business opportunities away from AiDigital.

101.    Defendants Kuchera and Held also previously attempted to run a curation business with another individual, Kyle Shore.

102.    Mr. Shore is the President of D4, an advertising agency based in Philadelphia, Pennsylvania.

103.    Working with Mr. Shore, Defendant Kuchera obtained or attempted to obtain an account with Xandr.

104.    Defendant Kuchera hid his identity while working with D4 and Mr. Shore.

105.    Upon information and belief, Defendants Kuchera and Held did not have success working with D4 and Mr. Shore and moved on to focus on Mavern.

**E.    Mavern.**

106.    Mavern is the only Mavern entity registered in Pennsylvania.

107.    There is no entity registered with the name "Mavern Media."

108.    Upon information and belief, Defendants are using a different d/b/a name for the same entity.

109.    Mavern Marketing's website, https://www.mavernmarketing.com, lists Defendant Burns as a co-founder.

110.    Defendant Kuchera has admitted that he, Defendant Held, and Defendant Burns are all partners of Mavern.

111.    An online search indicates that a company called "Mavern Marketing" had its address listed on Google Maps as 2400 Market Street in Philadelphia, which is the same address of the Fitler Club.

112.    As noted, AiDigital had been paying the costs associated with this office space.

113.    A version of the Mavern Marketing homepage from July 26, 2023 shows that the address listed on the Mavern Marketing website on that date was 1919 Market Street, Unit 2602, Philadelphia, PA 19103.

114.    This is the same address that Kuchera provided to AiDigital as his residence.

**F.    Kuchera/Held**

115.    Upon information and behalf, Defendants have also misappropriated AiDigital's Trade Secrets through Kuchera/Held.

116.    Defendants Kuchera and Held formed Kuchera/Held in June 2023 to divert business opportunities from AiDigital.

117.    In connection with the creation of Kuchera/Held, Defendant Kuchera texted Defendant Held on June 23, 2023, "[l]ocked lips on this" and "[t]ime to print money for ourselves."

## FIRST COUNT
### Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (All Defendants)

118.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

119.    Defendants misappropriated the Trade Secrets under 18 U.S.C. § 1836, *et seq.*

120.    The Trade Secrets have independent economic value that Plaintiff has taken reasonable measures to keep secret.

121.    The Trade Secrets are used in interstate commerce, as Plaintiff uses them to provide services to clients nationwide.

122.    Defendants knew or had reason to know that the Trade Secrets were acquired by improper means.

123.    Defendants Kuchera and Held acquired the Trade Secrets through their employment at AiDigital and used them for the benefit of Defendants Mavern and Kuchera/Held.

124.    Defendant Burns knew or should have known that the Trade Secrets Defendants Kuchera and Held used for Defendants Mavern and Kuchera/Held's clients were information they acquired from AiDigital.

125.    Defendants' misappropriation was willful and malicious.

126.    Defendants' misappropriation of this information has directly and proximately caused injury to AiDigital, which is immediate and irreparable, and for which AiDigital is entitled to equitable relief and monetary damages.

## SECOND COUNT
### Misappropriation of Trade Secrets (All Defendants)

127.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

128.    Defendants misappropriated the Trade Secrets under New York common law.

129.    The Trade Secrets have independent economic value that Plaintiff has taken reasonable measures to keep secret.

130.    Defendants knew or had reason to know that the Trade Secrets were acquired by improper means.

131.    Defendants Kuchera and Held acquired the Trade Secrets through their employment at AiDigital and used them for the benefit of Defendants Mavern and Kuchera/Held.

132.    Defendant Burns knew or should have known that the Trade Secrets Defendants Kuchera and Held used for Defendants Mavern and Kuchera/Held's clients were information they acquired from AiDigital.

133.    Defendants' misappropriation was willful and malicious.

134.    Defendants' misappropriation of this information has directly and proximately caused injury to AiDigital, which is immediate and irreparable, and for which AiDigital is entitled to equitable relief and monetary damages.

## THIRD COUNT
### Breach of Contract (Defendant Kuchera)

135.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

136.    AiDigital and Defendant Kuchera are parties to the Kuchera Agreement, an enforceable and valid contract.

137.    Pursuant to the Kuchera Agreement, and to protect the legitimate protectable interests of AiDigital, Defendant Kuchera agreed, among other things, to not (i) compete with AiDigital, (ii) solicit AiDigital's clients, and (iii) disclose AiDigital's confidential information.

138.    Defendant Kuchera breached the Restrictive Covenants Agreement, in which he agreed not to "directly or indirectly, become employed by, engage, invest or participate in a Competitive Business" by working for Mavern and Kuchera/Held.

139.    Further, Defendant Kuchera breached the Kuchera Agreement by, among other things, (i) misappropriating the Trade Secrets, (ii) using the information for the benefit of Mavern and Kuchera/Held, and (iii) diverting customers and corporate business opportunities away from AiDigital.

140.    As a direct and proximate result of Defendant Kuchera's breach, AiDigital has been injured and is entitled to equitable relief and monetary damages.

## FOURTH COUNT
### Breach of Contract (Defendant Kuchera)

141.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

142.    AiDigital and Defendant Kuchera are parties to the Kuchera Agreement, an enforceable and valid contract.

143.    Pursuant to the Kuchera Agreement, and to protect the legitimate protectable interests of AiDigital, Defendant Kuchera agreed, among other things, to not (i) compete with AiDigital, (ii) solicit AiDigital's clients, and (iii) disclose AiDigital's confidential information.

144.    Defendant Kuchera breached the Restrictive Covenants Agreement, in which he agreed not to "directly or indirectly, become employed by, engage, invest or participate in a Competitive Business" by working for D4 and Mr. Shore.

145.    Further, Defendant Kuchera breached the Kuchera Agreement by, among other things, (i) misappropriating the Trade Secrets, (ii) using the information for the benefit of D4, and (iii) diverting customers and corporate business opportunities away from AiDigital using D4.

146.    As a direct and proximate result of Defendant Kuchera's breach, AiDigital has been injured and is entitled to equitable relief and monetary damages.

## FIFTH COUNT
### Breach of Contract (Defendant Held)

147.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

148.    AiDigital and Defendant Held are parties to the Held Agreement, an enforceable and valid contract.

149.    Pursuant to the Held Agreement, and to protect the legitimate protectable interests of AiDigital, Defendant Held agreed, among other things, to not (i) compete with AiDigital, (ii) solicit AiDigital's clients, and (iii) disclose AiDigital's confidential information.

150.    Defendant Held breached the Restrictive Covenants Agreement, in which he agreed not to "directly or indirectly, become employed by, engage, invest or participate in a Competitive Business" by working for Mavern and Kuchera/Held.

151.    Further, Defendant Held breached the Held Agreement by, among other things, (i) misappropriating the Trade Secrets, (ii) using the information for the benefit of Mavern and Kuchera/Held, and (iii) diverting customers and corporate business opportunities away from AiDigital.

152.    As a direct and proximate result of Defendant Held's breach, AiDigital has been injured and is entitled to equitable relief and monetary damages.

## SIXTH COUNT
### Breach of Contract (Defendant Held)

153.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

154.    AiDigital and Defendant Held are parties to the Held Agreement, an enforceable and valid contract.

155.    Pursuant to the Held Agreement, and to protect the legitimate protectable interests of AiDigital, Defendant Held agreed, among other things, to not (i) compete with AiDigital, (ii) solicit AiDigital's clients, and (iii) disclose AiDigital's confidential information.

156.    Defendant Held breached the Restrictive Covenants Agreement, in which he agreed not to "directly or indirectly, become employed by, engage, invest or participate in a Competitive Business" by working for D4 and Mr. Shore.

157.    Further, Defendant Held breached the Held Agreement by, among other things, (i) misappropriating the Trade Secrets, (ii) using the information for the benefit of D4 and Kuchera/Held, and (iii) diverting customers and corporate business opportunities away from AiDigital using D4.

158.    As a direct and proximate result of Defendant Held's breach, AiDigital has been injured and is entitled to equitable relief and monetary damages.

### SEVENTH COUNT
### Breach of the Duty of Loyalty (Defendants Kuchera and Held)

159.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

160.    Defendant Kuchera owed AiDigital a duty of loyalty as a Senior Director of Growth.

161.    Defendant Held owed AiDigital a duty of loyalty as a Curation Associate.

162.    Defendants Kuchera and Held breached their duty of loyalty by, among other things, (i) misappropriating the Trade Secrets, (ii) using the information for the benefit of Mavern

and Kuchera/Held, and (iii) diverting customers and corporate business opportunities away from AiDigital.

163.    As a direct and proximate result of Defendant Kuchera's and Held's breaches, AiDigital has been injured and is entitled to equitable relief and monetary damages, including Defendant Kuchera's and Held's salaries, incentive compensation, and other earnings paid during the period in which the malfeasance occurred.

## EIGHTH COUNT
### Tortious Interference with a Contract (Defendants Held, Burns, Mavern, and Kuchera/Held)

164.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

165.    Defendants Held, Burns, Mavern, and Kuchera/Held were aware of the existence, validity, and enforceability of the Kuchera Agreement.

166.    Defendants Held, Burns, Mavern, and Kuchera/Held engaged in tortious and wrongful conduct, including but not limited to, (i) misappropriating the Trade Secrets, (ii) using the information for the benefit of Mavern and Kuchera/Held, (iii) diverting customers and corporate business opportunities away from AiDigital, and (iv) otherwise interfering with the Kuchera Agreement, with no valid or lawful justification or purpose thereof.

167.    The intended effect and result of Defendants Held, Burns, Mavern and Kuchera/Held's conduct was that Defendant Kuchera breached his agreement, resulting in injury to AiDigital.

168.    Defendants Held, Burns, Mavern, and Kuchera/Held engaged in the above conduct for the purpose of and with the intent to inflict pecuniary harm on AiDigital by inducing Defendant Kuchera to breach his agreement.

## NINTH COUNT
### Tortious Interference with a Contract (Defendants Kuchera, Burns, Mavern, and Kuchera/Held)

169.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

170.    Defendants Kuchera, Burns, Mavern, and Kuchera/Held were aware of the existence, validity, and enforceability of the Held Agreement.

171.    Defendants Kuchera, Burns, Mavern, and Kuchera/Held engaged in tortious and wrongful conduct, including but not limited to, (i) misappropriating the Trade Secrets, (ii) using the information for the benefit of Mavern and Kuchera/Held, (iii) diverting customers and corporate business opportunities away from AiDigital, and (iv) otherwise interfering with the Held Agreement, with no valid or lawful justification or purpose thereof.

172.    The intended effect and result of Defendants Kuchera, Burns, Mavern, and Kuchera/Held's conduct was that Defendant Held breached his agreement, resulting in injury to AiDigital.

173.    Defendant Kuchera engaged in the above conduct for the purpose of and with the intent to inflict pecuniary harm on AiDigital by inducing Defendant Held to breach his agreement.

## TENTH COUNT
### Tortious Interference with Existing Contractual Relations (All Defendants)

174.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

175.    Defendants were aware of the existence, validity, and enforceability of contracts between AiDigital and its customers.

176.    Defendants engaged in tortious and wrongful conduct, including but not limited to, (i) misappropriating the Trade Secrets, (ii) using the information for the benefit of Mavern and

Kuchera/Held, (iii) diverting customers and corporate business opportunities away from AiDigital, and (iv) otherwise interfering with contracts between AiDigital and its customers, with no valid or lawful justification or purpose thereof.

177.    The intended effect and result of the Defendants' conduct was to divert customers and corporate business opportunities away from AiDigital, resulting in injury to AiDigital.

178.    Defendants engaged in the above conduct for the purpose of and with the intent to inflict pecuniary harm on AiDigital.

## NINTH COUNT
### Civil Conspiracy (All Defendants)

179.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 117 of the Complaint as if more fully set forth herein.

180.    Defendants misappropriated AiDigital's Trade Secrets.

181.    Defendants Kuchera and Held had an agreement whereby Defendants Burns would help them (i) misappropriate AiDigital's Trade Secrets, (ii) use the information for the benefit of Mavern and Kuchera/Held, and (iii) divert customers and corporate business opportunities away from AiDigital.

182.    Defendants Kuchera and Held intentionally stole the Trade Secrets and transmitted them to Defendants Burns, Mavern, and Kuchera/Held.

183.    Defendants intentionally used the misappropriated Trade Secrets to divert customers and corporate business opportunities away from AiDigital.

184.    Defendants acted with a common purpose to steal AiDigital's Trade Secrets.

185.    Defendants' agreement to help one another and misappropriate the Trade Secrets was intentional, overt, and done with the purpose of damaging Plaintiff.

186.    Defendants' agreement to help one another and misappropriate the Trade Secrets actually injured Plaintiff, entitling Plaintiff to equitable relief and monetary damages.

## ATTORNEYS' FEES

AiDigital retained counsel to recover its Trade Secrets.  Pursuant to 18 U.S.C. § 1836, AiDigital is entitled to and hereby seeks recovery of all of its costs and expenses, including its reasonable attorneys' fees.

## JURY DEMAND

AiDigital hereby demands a jury trial under Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

For these reasons, AiDigital demands relief against Defendants as follows:

A.    Enjoining and restraining Defendants Kuchera, Held, and Burns, their agents, employees, and all persons acting in concert with Defendants from:

  i. using or disclosing any of the Trade Secrets (whether in whole or in part, even if embodied only in a component part of a larger service);

  ii. directly or indirectly soliciting business from, or providing or attempting to provide services to, any Client (including all U.S. offices of such client) to which Defendants had been introduced or about which Defendants had received information through AiDigital, or any Client for which Defendants had performed services while employed by AiDigital;

  iii. directly or indirectly, becoming employed by, engaging, investing or participating in Mavern, Kuchera/Held, or any other person or entity that performs services that are the same or substantially similar to the business of the Company, including advertising services.

B.      Enjoining and restraining Mavern and Kuchera/Held from offering or providing any advertising services.

C.      Requiring Defendants to:

i.   return all of the Trade Secrets and ultimately (after delivering copies of all documents to AiDigital and Defendants' counsel) destroy all remaining copies of the Trade Secrets and any other AiDigital information; and

ii.  identify all persons to whom the Trade Secrets have been disclosed.

D.      Entering an award in favor of AiDigital including:

i.   its actual and consequential damages;

ii.  Defendants' salaries, incentive compensation, and other earnings;

iii. exemplary damages in double the amount of damages pursuant to 18 U.S.C. § 1836;

iv.  pre- and post-judgment interest;

v.   attorneys' fees and costs; and

vi.  such other and further relief as this Court may deem just, proper, and equitable.

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

Dated:  March 13, 2024

*/s/ Michael A. Kaplan*
Michael A. Kaplan, Esq.
Rasmeet Chahil, Esq.
1251 Avenue of the Americas
New York, NY 10020
Telephone: (973) 597-2500
Email:  mkaplan@lowenstein.com
Email:  rchahil@lowenstein.com

*Attorneys for AiDigital Operating LLC*
